| | |
|---|---|
| 1 | Jon B. Fougner (State Bar No. 314097) |
| 2 | jon@FougnerLaw.com |
| 3 | 600 California Street, 11th Fl. |
|   | San Francisco, CA 94108 |
| 4 | Telephone: (415) 577-5829 |
|   | Facsimile: (206) 338-0783 |
| 5 | |
| 6 | [Additional counsel appear on signature page] |
| 7 | |
| 8 | *Attorneys for Plaintiff Terry Fabricant* |
|   | *and the Proposed Class* |
| 9 | |

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b) |
| GOLDWATER BANK, N.A. a/k/a "GOLDWATER BANK, N.A. INC." a/k/a "GOLDWATER BANK, N.A. INCORPORATED," | 2. KNOWING OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b) |
| Defendant. | Class Action |
| | DEMAND FOR JURY TRIAL |

Plaintiff TERRY FABRICANT ("Plaintiff"), by his undersigned counsel, for this class action complaint against Defendant GOLDWATER BANK, N.A. a/k/a "GOLDWATER BANK, N.A. INC." a/k/a "GOLDWATER BANK, N.A. INCORPORATED," and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Goldwater Bank" or "Defendant"), alleges as follows:

## I. INTRODUCTION

1. <u>Nature of Action</u>. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## II. PARTIES

2. Plaintiff Terry Fabricant is an individual residing in California, in this District.

3. Defendant is an Arizona corporation.

4. Its principal place of business is 2525 East Camelback Road, Suite 1100, Phoenix, Arizona 85016.

5. It does business in California and throughout the United States, including sending telemarketing calls into this district.

## III. JURISDICTION AND VENUE

6. <u>Jurisdiction</u>. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because they arise under a law of the United States: 47 U.S.C. § 227.

7. <u>Personal Jurisdiction</u>. This Court has personal jurisdiction over Defendant because the challenged calls at the heart of this case were directed by it into California.

8. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff resides in this District and the challenged calls at the heart of this case were directed by Defendant into this District.

## IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

<u>The History of the TCPA</u>

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to people who receive calls in violation of § 227(b)(1)(A). *Id.* § 227(b)(3).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. Since 2013, the FCC has required "prior express written consent" for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this

> information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted).

<u>The Growing Problem of Automated Telemarketing</u>

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

15. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

16. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

17. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y.

Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

18. Even more recently, a technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019 (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html

## V. FACTUAL ALLEGATIONS

The Parties

19. Defendant is a mortgage lender.

20. One of Defendant's strategies for marketing its services and generating new customers is telemarketing.

21. Defendant's strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

22. Defendant uses ATDSs that have the capacity to store or produce telephone numbers to be called.

23. Defendant's ATDSs include predictive dialers.

24. Recipients of these calls, including Plaintiff, did not consent to receive them.

25. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

<u>The Nine or More Unsolicited, Automated Telemarketing Calls by Defendant to Plaintiff's Cellular Telephone Number Listed on the National Do Not Call Registry</u>

26. Plaintiff's telephone number, (818)-266-XXXX, is registered to a cellular telephone service. All calls to Plaintiff described herein were to that number.

27. It has been on the National Do Not Call Registry since June 4, 2008.

28. On August 13, 2018, around 9:38 a.m. PT, Plaintiff received a call from Defendant.

29. The caller ID showed the telephone call was from (818) 214-8794.

30. Plaintiff answered.

31. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

32. Eventually, however, a live salesperson did come on the line.

33. The salesperson pitched Plaintiff on taking out a mortgage loan.

34. In order to identify the caller, Plaintiff provided his email address.

35. Plaintiff, however, did not promptly receive an email from the caller.

36. Plaintiff did not provide his prior express written consent to receive more telemarketing calls.

37. On August 15, 2018, around 12:43 p.m. PT, Plaintiff received a call from Defendant.

38. The caller ID showed the telephone call was from (818) 214-8794.

39. Plaintiff answered.

40. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

41. Eventually, however, a live salesperson did come on the line.

42. The salesperson pitched Plaintiff on taking out a mortgage loan.

43. In order to identify the caller, Plaintiff provided his email address. He received an e-mail the next morning from Shayla.Mulkins@goldwaterbank.com.

44. Plaintiff did not provide his prior express written consent to receive more telemarketing calls.

45. On August 16, 2018, around 11:32 a.m. and 11:35 a.m. PT, Plaintiff received two calls from Defendant.

46. The caller ID showed the telephone calls were from (818) 214-8794.

47. Plaintiff answered both.

48. Each time, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

49. Each time, eventually, however, a live salesperson did come on the line.

50. Each time, the salesperson pitched Plaintiff on taking out a mortgage loan.

51. Each time, in order to identify the caller, Plaintiff provided his email address.

52. Plaintiff, however, did not promptly receive an email from the caller.

53. Plaintiff did not provide his prior express written consent to receive more telemarketing calls.

54. Throughout the course of the foregoing unsolicited telemarketing calls from Defendant, Plaintiff also missed several calls from Defendant.

55. Plaintiff had never consented to any of these calls. Nevertheless, on August 16, 2018, he twice called Defendant and asked it to stop calling him.

56. On August 22, 2018, around 9:53 a.m. and 4:53 p.m. PT, Plaintiff received two calls from Defendant.

57. The caller ID showed the telephone calls were from (818) 214-8794.

58. Plaintiff answered both.

59. Each time, unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

60. Each time, eventually, however, a live salesperson did come on the line.

61. Each time, the salesperson pitched Plaintiff on taking out a mortgage loan.

62. Each time, Plaintiff asked Defendant to stop calling him.

63. On August 23, 2018, around 9:42 a.m. PT, Plaintiff received a call from Defendant.

64. The caller ID showed the telephone call was from (818) 214-8794.

65. Plaintiff answered.

66. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

67. Eventually, however, a live salesperson did come on the line.

68. The salesperson pitched Plaintiff on taking out a mortgage loan.

69. In order to identify the caller, Plaintiff provided his email address.

70. Plaintiff, however, did not promptly receive an email from the caller.

71. Plaintiff did not provide his prior express written consent to receive more telemarketing calls.

72. On November 20, 2018, around 9:46 a.m. PT, Plaintiff received a call from Defendant.

73. The caller ID showed the telephone call was from (818) 214-8794.

74. Plaintiff answered.

75. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

76. Eventually, however, a live salesman did come on the line.

77. He pitched Plaintiff on taking out a veteran's loan.

78. In order to identify the caller, Plaintiff provided his email address.

79. On November 20, 2018, at 9:52 a.m. PT, Plaintiff received an email from Defendant's salesperson confirming that the two had spoken that day.

80. On November 27, 2018, around 2:00 p.m. PT, Plaintiff received a call from Defendant.

81. The caller ID showed the telephone call was from (818) 214-8794.

82. Plaintiff answered.

83. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

84. Eventually, however, a live salesman did come on the line.

85. He pitched Plaintiff on taking out a veteran's loan.

86. In order to identify the caller, Plaintiff provided his email address.

87. On November 27, 2018, at 2:06 p.m. PT, Plaintiff received an email from Defendant's salesperson confirming that the two had spoken.

88. Plaintiff did not provide his prior express written consent to receive more telemarketing calls.

89. On November 27, 2018, around 2:20 p.m. PT, Plaintiff received a call from Defendant.

90. The caller ID showed the telephone call was from (818) 214-8794.

91. Plaintiff answered.

92. Unlike on a normal call, no one promptly announced herself to Plaintiff. Instead, Plaintiff heard an unnatural click and pause.

93. Eventually, however, a live salesman did come on the line.

94. He pitched Plaintiff on taking out a veteran's loan following up on his e-mail.

95. He told Plaintiff that a computer had made the call.

Allegations Common to All Calls

96. On information and belief, despite their (818) area code, the calls did not originate from the San Fernando Valley or thereabouts. Instead, on information and belief, the area code of the caller ID was spoofed so as to catch the attention of

Plaintiff (whose phone number bears an (818) area code) and trick him into believing that the calls were local.

97. Defendant's purpose in making the call was to sell its services to Plaintiff.

98. Plaintiff has never been a customer of Defendant.

99. Plaintiff did not provide prior express written consent to receive ATDS-generated or prerecorded calls from, or on behalf of, Defendant.

100. Plaintiff did not provide prior express consent to receive calls from Defendant.

101. Defendant never disclosed to Plaintiff that it would use ATDSs to call him.

102. Defendant never disclosed to Plaintiff that he need not consent to receiving automated telemarketing in order to buy its products.

103. The calls were not necessitated by an emergency.

104. All parties were in the United States during the calls.

105. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendant. The calls were an annoying, harassing nuisance.

106. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

## VI.   CLASS ACTION ALLEGATIONS

107. <u>Class Definition</u>. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of a class (the "Class") defined as follows: All persons to whom: (a) Defendant and/or a third party acting on Defendant's behalf made one or more non-emergency telephone calls; (b)

promoting Defendant's goods or services; (c) to a cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of filing the original complaint in this case and ends at the date of trial.

108. <u>Exclusions</u>. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, the judges to whom this case is assigned and the legal representatives, assignees, and successors and immediate family members of all of the foregoing.

109. <u>Numerosity</u>. The Class is so numerous that joinder of all its members is impracticable. On information and belief, the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

110. <u>Commonality</u>. The key questions driving the outcome of this dispute have the same answers for all Class members. Those questions include, but are not limited to, the following:

    a.    Whether Defendant used an ATDS, as defined by *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018);

    b.    Whether Defendant purchased batches of leads of prospects who had not consented to be called by it;

    c.    Whether Defendant's practice was to disclose to people that it would use an ATDS to call them before doing so—or not;

    d.    Whether Defendant's practice was to disclose to people that they need not consent to receive automated telemarketing in order to buy its products—or not;

    e.    Whether Defendant's calls are placed from within the United States;

    f.    Whether selling a loan constitutes an "emergency" within the meaning of the TCPA;

1         g.      Whether Defendant's violations of the TCPA were knowing and willful

        h.      Whether Defendant is liable for ATDS-generated and/or automated or prerecorded calls promoting its products made by third parties; and

        i.      Whether Defendant should be enjoined from engaging in similar nonconsensual telemarketing in the future.

111. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims and those of the Class arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

112. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable counsel with experience in TCPA class litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Class.

113. <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important advantages, including judicial economy.

114. <u>Superiority</u>. A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendant to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are dwarfed by the cost of prosecution. Management of these claims is likely to present significantly fewer difficulties than are presented in many class

actions because the calls at issue are automated and because the TCPA lays down bright-line standards for liability and damages. Class treatment is superior to thousands of individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

115.   Only 1 in 7 million robocalls results in the filing of a federal TCPA suit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ (4,392 TCPA complaints). Except to the extent that they are remedied by class actions, the other 6,999,999 are made with impunity.

116.   <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

117.   <u>Notice</u>. Plaintiff anticipates that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from Defendant's calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses). Plaintiff anticipates that Class counsel will notify Class members in writing at such addresses.

- 13 -
COMPL.
*Fabricant v. Goldwater Bank, N.A.*

actions because the calls at issue are automated and because the TCPA lays down bright-line standards for liability and damages. Class treatment is superior to thousands of individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

115.   Only 1 in 7 million robocalls results in the filing of a federal TCPA suit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ (4,392 TCPA complaints). Except to the extent that they are remedied by class actions, the other 6,999,999 are made with impunity.

116.   <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

117.   <u>Notice</u>. Plaintiff anticipates that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from Defendant's calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses). Plaintiff anticipates that Class counsel will notify Class members in writing at such addresses.

## VII. FIRST CLAIM FOR RELIEF

### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

118. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

119. The foregoing acts and omissions of Defendant and/or its affiliates or agents, and/or other persons or entities acting on Defendant's behalf, constitute numerous violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

120. Therefore, Plaintiff and members of the Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute. 47 U.S.C. § 227(b)(3)(B).

121. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant, its affiliates and agents, and any other persons or entities acting on its behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice.

## VIII. SECOND CLAIM FOR RELIEF

### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

122. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

123. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendant, its affiliates or agents, and/or other persons or entities acting on its behalf, Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular

telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute. 47 U.S.C. § 227(b)(3).

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Defendant as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that actions complained of herein by Defendant and/or its affiliates, agents, or related entities violate the TCPA;

E. An order enjoining Defendant and its affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award to Plaintiff and the Class of attorney's fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just and proper.

## X. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

## XI. SIGNATURE ATTESTATION

The CM/ECF user filing this paper attests that concurrence in its filing has been obtained from the other signatory.

RESPECTFULLY SUBMITTED AND DATED this 8th day of January, 2019.

1
2  By: */s/ Jon B. Fougner*
3  Jon B. Fougner

4  Robert Stempler
5  E-mail: socalconsumerlawyer@gmail.com
   CONSUMER LAW OFFICE OF ROBERT
6  STEMPLER, APC
   8200 Wilshire Blvd, Suite 200
7  Beverly Hills, CA, 90211
8  Telephone: (323) 486-0102

9  *Attorneys for Plaintiff Terry Fabricant and the*
10 *Proposed Class*