UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated, | Case No. 2:19-cv-00164-DSF-JC |
| Plaintiff, | **PLAINTIFF'S SET OF DISCOVERY TO GOLDWATER BANK 1** |
| v. | |
| GOLDWATER BANK, N.A. a/k/a "GOLDWATER BANK, N.A. INC." a/k/a "GOLDWATER BANK, N.A. INCORPORATED," | |
| Defendant. | |
| GOLDWATER BANK, N.A., | |
| Third-Party Plaintiff, | |
| v. | |
| BEST-RATE HOLDINGS, LLC, | |
| Third-Party Defendant. | |

1    TO:   GOLDWATER BANK, N.A.; and

2    TO:   THE ATTORNEYS OF RECORD.

3

4        Pursuant Federal Rules of Civil Procedure ("Rules") 26, 33 and 34,

5 Plaintiff's Set of Discovery to Goldwater Bank 1 is hereby propounded to you and

6 your attorneys of record. This discovery is intended to draw upon the combined

7 knowledge of you, your agents and your attorneys.

8                **I.**     **INSTRUCTIONS FOR INTERROGATORIES**

9        1.     Pursuant to Rule 33, submit your answers to the interrogatories herein

10 in writing and under oath to the undersigned counsel within 30 days of the date of

11 service on you. If any of these interrogatories cannot be answered in full, then you

12 should answer to the fullest extent possible, specifying the reasons for your

13 inability to answer the remainder and stating whatever information or knowledge

14 you have concerning the unanswered portion or portions. In answering these

15 interrogatories, furnish such information as is available to you, regardless of

16 whether this information is obtained directly by you, through your agents or

17 representatives or by any of your attorneys.  For each interrogatory, please identify

18 all persons who provided information used in answering it.

19        2.     These interrogatories are continuing in nature.  In accordance with

20 Rule 26, you are required to supplement your answers to the interrogatories when

21 new or additional information becomes known to you.

22               **II.**     **INSTRUCTIONS FOR REQUESTS FOR PRODUCTION**

23        3.     Pursuant to Rule 34(b)(2)(B), on the date production is due, produce

24 all the responsive documents or specify a reasonable date certain on which they

25 will be produced.

26        4.     In accordance with Rule 34(b), provide written responses to the

27 following requests and produce the requested documents as they are kept in the

28

1   ordinary and usual course of business or organize and label the documents to

2   correspond to the categories in this request.

3       5.      Produce all the requested documents that are in your possession,

4   custody or control.

5       6.      All requests for computerized data are to be produced in a computer-

6   readable format. Fidelity, quality, color, resolution and metadata should not be

7   degraded, destroyed or lost. If any SQL scripts or other queries are executed to

8   export the information for production, disclose the code executed. If you believe

9   that any transformation of ESI is required before production—for instance, if you

10  believe that certain ESI must be reduced to a screenshot before production—please

11  meet and confer with us right away.

12      7.      A draft and a final version are two distinct documents.

13      8.      If you withhold any responsive document on the grounds that the

14  document is privileged or otherwise protected, state in a privilege log the nature of

15  the claim of privilege or protection; the type and nature of the document; the date

16  of the document; the author(s), the addressee(s), and recipient(s) of the document;

17  the document's present location; and any other information that will enable

18  Plaintiff and the Court to assess the applicability of the privilege or protection.

19      9.      If a document responsive to these requests was at any time in your

20  possession, custody or control but is no longer available for production in its

21  original condition, state the following information:

22          a.      whether it has been altered, tampered with, edited, manipulated,

23  destroyed and/or deleted;

24          b.      if so, how, how much, why, when, where and by whom; and

25          c.      what remedial measures, if any, have been taken to prevent

26  similar occurrences in the future.

27

28

PL.'S SET DISC. GOLDWATER BANK 1
*Fabricant v. Goldwater Bank, N.A.*, Case No. 2:19-cv-00164-DSF-JC

1    10.   These requests shall be deemed continuing so as to require seasonable

2    supplemental responses as you or your attorneys obtain further information or

3    materials from the time your answers are served through trial.

### III.   DEFINITIONS

5    The following terms shall have the following meanings, even when not

6    capitalized or bolded:

7    11.   "**Describe**" means to identify and explain fully the characteristics,

8    nature and substance of a given thing, action, communication or event, to set forth

9    all details, physical properties and dimensions of a physical thing inquired about,

10   and to specify all pertinent dates, locations, causes, purposes, effects and results of

11   the thing, action, communication or event inquired about.

12   12.   "**Document**" means any writing as defined in Rule 34(a)(1)(A),

13   however produced, reproduced, archived or stored, within your possession or

14   subject to your control, of which you have knowledge or to which you now have or

15   previously had access, including all ESI.

16   13.   "**Identify**" (when used in reference to a document) means to state the

17   date of preparation of the document, its author(s), the sender (if any), the

18   recipient(s) (if any), the nature of the document (e.g., letter, memorandum or tape)

19   and other means of identification sufficient to specify the document for purposes of

20   a request for production, and to further state its present location and custodian. If

21   any such document was, but no longer is, in your possession, custody or control,

22   describe what disposition was made of it and give the name, address and telephone

23   number of the person presently having possession, custody or control of the

24   document.

25   14.   "**Identify**" (when used in reference to a natural person) means to state

26   that person's full name, title, business address, telephone number, email address,

27   occupation and employer, along with a statement of whether that person is

28   represented by your counsel in this litigation.

15.   **"Identify"** (when used in reference to an entity) means to state the entity's full name, address, telephone number, state of incorporation or organization and web address. Unless it otherwise appears from the context, a request for the identity of a person relates to all persons in the relevant classification or category, and the request for the identity of an entity includes all affiliated entities.

16.   **"Electronically stored information"** or **"ESI"** means any electronic document and includes, without limitation, the following:

    a.   activity listings of email receipts and/or transmittals;

    b.   output resulting from the use of any software program (whether such program is hosted locally, on a dedicated server, in the cloud, or otherwise), including without limitation word processing documents (such as Google Docs or Microsoft Word), notes (such as Apple Notes or Evernote), task lists (such as Asana or Trello), calendar entries, slideshows (such as PowerPoint or Keynote), spreadsheets, database files, charts, graphs, outlines, email, SMS, MMS, social media (including, but not limited to, Facebook, LinkedIn, Twitter and Snapchat), instant messaging (including, but not limited to, Google Hangouts, Slack and Yammer), voicemails, bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether such electronic data exist in an active file, archived file, deleted file or file fragment; and

    c.   any and all items stored on computer memories, hard disks, network servers, individual computer workstations or clients, thumb drives, jump drives, CDs, DVDs, cloud servers, floppy disks, CD-ROMs, magnetic tape, microfiche, personal digital assistant, smartphone and/or tablet (e.g., iPhone, Droid, Blackberry, Galaxy, HTC, iPad, iPod, Kindle, Nook) or any other vehicle for digital data storage and/or transmittal. To minimize redundant work for all parties, Plaintiff requests that ESI be processed and produced in a manner that

1   preserves all metadata and that the parties confer regarding the production of
2   metadata and the form of any electronic production before the gathering or
3   processing of ESI.

4          In each instance (a) through (c) above, information is ESI regardless of
5   whether or not it is ostensibly (1) professional or personal; (2) local, remote or
6   cloud-based; (3) archival or not; (4) in English, Spanish or another language.

7          17.   **"Or"** means and/or.

8          18.   **"Person"** means any natural person or legal entity, including, without
9   limitation, any business or governmental entity or association.

10         19.   **"Plaintiff"** means the plaintiff in this lawsuit.

11         20.   **"Policy"** means any instruction, practice, procedure, directive, routine,
12  guideline, rule, course of conduct or code of conduct that was or has been
13  recognized, adopted, issued or followed by you—regardless of whether written or
14  unwritten, formal or informal, recorded or unrecorded.

15         21.   **"TCPA"** means the Telephone Consumer Protection Act, 47 U.S.C. §
16  227.

17         22.   **"Telemarketing"** means a call, SMS, MMS, fax or other
18  telecommunication that could have generated or was intended to generate leads,
19  customers or sales within the United States. A communication is telemarketing
20  even though it (1) had other, additional purposes (e.g., fulfillment of a partially
21  completed transaction or verification of information); (2) was to a person who had
22  consented to receive it; (3) was to a person who had a prior existing business
23  relationship with you; (4) was not made by you; and/or (5) was not made for your
24  exclusive or direct benefit. For the avoidance of doubt, lead generation activities in
25  furtherance of the foregoing are included within the definition of "telemarketing."

26         23.   **"Third party"** means any natural person, partnership, association,
27  corporation, joint venture, or other business or legal entity not owned or controlled
28  by you.

- 6 -

24.     **"Vendor"** means any third party under contract with, hired by, employed by, paid by or working for you, directly or indirectly (including recursively), for purposes of telemarketing or phone-based activities or services, including, but not limited to, generating leads, warm transfers, hot transfers or any other call transfers, making outbound telemarketing calls, or tracking or aggregating data related to any of those activities, including, but not limited to, Best Rate Holdings and ReviMedia and their employees and affiliates.

25.     **"You"** means the person to which these requests are propounded and includes, without limitation, any of its past or present offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, partners, joint venturers, officers, directors, employees, agents, attorneys or representatives.

26.     All other words shall have their ordinary definition as defined by Merriam-Webster's online dictionary, located at http://www.merriam-webster.com/.

## IV.   RELEVANT TIME PERIOD

Except where otherwise indicated, these requests, including but not limited to the ones phrased in the present tense, pertain to the time period starting four years before the filing of the original complaint in this case and continuing through the present and include all documents and information that relate in whole or in part to such period, or to events or circumstances during such period, even though dated, prepared, generated or received outside of that period.

## V.   INTERROGATORIES

After reading the foregoing, please answer the following interrogatories.

CROSS-REFERENCES[1]

**INTERROGATORY NO. 1:**   Identify each and every person who provided the information to answer interrogatories propounded to you in this case and specify the interrogatories about which each such person provided information.

**ANSWER:**

**INTERROGATORY NO. 2:**   In response to which requests for production in this case have you produced documents?

**ANSWER:**

**INTERROGATORY NO. 3:**   For each spreadsheet, database, call log, lead log and consent log produced in this litigation, state how, when, where, why and by whom it was created, and what each of its rows and columns represents.

**ANSWER:**

NATURAL PERSONS

**INTERROGATORY NO. 4:**   Identify all people with knowledge relevant to claims or defenses in this case.

**ANSWER:**

**INTERROGATORY NO. 5:**   Identify whom you may call as a witness in this case, whether or not for impeachment.

**ANSWER:**

---

[1] Throughout this document, sub-headings, such as this one, are rough and partial summaries for convenience only, and do not limit or modify the scope of the discovery requests contained within them.

1

PLAINTIFF

2  **INTERROGATORY NO. 6:**   What was stated in the communications referenced

3  at Dkt. No. 22-1 ¶¶ 6-9?

4  **ANSWER:**

5

6

CONSENT

7  **INTERROGATORY NO. 7:**   How, if at all, have you determined whether or not

8  the persons whose phone numbers appeared in leads you bought gave prior express

9  written consent for you to call them?

10  **ANSWER:**

11

12  **INTERROGATORY NO. 8:**   When putative class members purportedly

13  consented to receive your calls, had a name with the words "Goldwater Bank"

14  been disclosed to them as the specific seller that would be calling them?

15  **ANSWER:**

16

17

TELEMARKETING

18  **INTERROGATORY NO. 9:**   Identify by make, model, structure and location the

19  system(s), platform(s), and/or equipment used by you, or any vendor, to place

20  calls.

21  **ANSWER:**

22

23  **INTERROGATORY NO. 10:** Describe how calls to putative class members were

24  made.

25  **ANSWER:**

26

27  **INTERROGATORY NO. 11:** Identify and describe the work of each vendor

28  whose work relates to telemarketing.

1

**ANSWER:**

2

3  **INTERROGATORY NO. 12:** How many leads have you bought from Best Rate

4  Holdings?

5  **ANSWER:**

6

7  **INTERROGATORY NO. 13:** How, if at all, have you used the National Do Not

8  Call Registry?

9  **ANSWER:**

10

11  **INTERROGATORY NO. 14:** What changes (if any) to your telemarketing

12  policies (if any) have you made since the filing of this lawsuit?

13  **ANSWER:**

14

15              **VI.    REQUESTS FOR PRODUCTION**

16        After reading the foregoing, please answer the following requests for

17  production.

18

19                    CROSS-REFERENCES

20  **REQUEST FOR PRODUCTION NO. 1:**   Please produce all non-attorney-

21  client-privileged documents identified in or used to research or draft responses to

22  interrogatories in this case.

23  **RESPONSE:**

24

25  **REQUEST FOR PRODUCTION NO. 2:**   Please produce all documents

26  identified in your Federal Rule of Civil Procedure 26(a)(1) initial disclosures.

27  **RESPONSE:**

28

**REQUEST FOR PRODUCTION NO. 3:**   Please produce all documents related to, supporting or contradicting any affirmative defense made in any answer by you to any complaint in this case.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**   Please produce all documents related to, supporting or contradicting any claim made by you in any paper filed in this case, including, but not limited to:

        a.   that Plaintiff has a "brazen scheme by the Plaintiff to use a false name to invite telephone calls from businesses, such as Goldwater Bank, in order to facilitate a lawsuit for violations of the Telephone Consumer Protection Act," Dkt. No. 15 at ECF 7:3-6;

        a.   that "Plaintiff provided a fake name when he consented to be contacted, he provided his address (20310 Londelius St., Winnetka, CA, 91306), telephone number ((818) 266-1083), and e-mail address (TTFAB@aol.com)," *id.* at ECF 7:9-12;

        b.   that "Plaintiff is a professional TCPA class-action litigant," *id.* at ECF 7:26;

        c.   that on "or about April 27, 2018, Plaintiff accessed www.LoansOnline.com," *id.* at ECF 9:14;

        d.   that Plaintiff never indicated "that he did not consent to be contacted," *id.* at ECF 13:5-6;

        e.   that "Plaintiff does not view the receipt of calls from an auto-dialer or prerecorded voice as an invasion of a privacy," *id.* at ECF 19:18-20;

        f.   that "Goldwater Bank performs due diligence on all vendors and obtains certain assurances that such vendors will operate in compliance with

1  applicable law and provide leads that have provided the requisite consent to be

2  contacted as required by the TCPA," Dkt. No. 28 ¶ 10;

3          g.    that "Best Rate provided implied and express assurances that

4  the leads it was selling to Goldwater Bank would be for mortgage consumers who

5  had provided appropriate consent, including consent required by the TCP A, to be

6  contacted by third-party mortgage companies," *id.* at ¶ 11;

7          h.    that "Goldwater relied on these assurances that the leads Best

8  Rate was selling to Goldwater Bank would be for mortgage consumers who had

9  provided appropriate consent, including consent required by the TCPA, to be

10  contacted by third-party mortgage companies," *id.* at ¶ 12;

11          i.    that "Goldwater Bank entered into an agreement with Best Rate

12  under which Best Rate would provide Goldwater Bank with contact information

13  for potential mortgage loan customers who opted to receive information about

14  Goldwater Bank's mortgage services," *id.* at ¶ 13;

15          j.    that at "no time was Best Rate an agent of Goldwater Bank, and

16  at no time did Goldwater Bank manage, control, or oversee Best Rate's

17  telemarketing practices. Rather Goldwater Bank relied on Best Rate's

18  representation that Best Rate would abide by the applicable federal and state

19  statutes and regulations in their telemarketing practices," *id.* at ¶ 14;

20          k.    that "Best Rate represented to Goldwater Bank that it would

21  only provide leads where the customer expressed interest in a mortgage loan and

22  expressly consented to being contacted," *id.* at ¶ 15;

23          l.    that "Goldwater Bank purchased a lead from Best Rate, which

24  was identified as Lead ID 19918610 (the 'Subject Lead') [a] true and correct copy

25  of [which was] attached [to Dkt. No. 28] as Exhibit 1," *id.* ¶ 16;

26          m.    that "Goldwater Bank subsequently called the number provided

27  in the Subject Lead in an attempt to reach 'Luke Carz,' the name provided with the

28  Subject Lead," *id.* at ¶ 17;

1          n.     that "Goldwater Bank relied on Best Rate to obtain consent on

2    all leads prior to selling such leads to Goldwater Bank," *id.* at ¶ 20;

3          o.     that "Best Rate knew or should have known that Goldwater

4    Bank would contact leads, including the Subject Lead, it purchased from Best

5    Rate," *id.* at ¶ 21;

6          p.     that "Best Rate knew or should have known that Goldwater

7    Bank was relying on it to obtain the required TCPA compliant consent to contact

8    leads, including the Subject Lead," *id.* at ¶ 22;

9          q.     that at "the time Best Rate sold the Subject Lead to Goldwater

10    Bank, it was foreseeable that the Subject Lead would lead to a lawsuit against

11    Goldwater Bank alleging a violation of the TCPA," *id.* at ¶ 23;

12          r.     that at "the time it purchased the Subject Lead from Best Rate,

13    Goldwater Bank had no way of knowing that Best Rate failed to obtain the

14    required TCPA[-]compliant consent for the Subject Lead," *id.* at ¶ 24;

15          s.     that "Best Rate has materially breached its agreement," *id.* at ¶

16    30;

17          t.     that if "Goldwater Bank is held liable to Plaintiff and/or

18    members of the putative class for damages, such liability will be vicarious only,"

19    *id.* at ¶ 47;

20          u.     that Best Rate violated the UCL, *id.* at ¶ 51.

21    **RESPONSE:**

22

23    **REQUEST FOR PRODUCTION NO. 5:**   Please produce all documents

24    produced and all interrogatory, RFP and RFA responses and objections served in

25    this litigation, except those already produced to or by Plaintiff.

26    **RESPONSE:**

27

28

**REQUEST FOR PRODUCTION NO. 6:**   Please produce all documents that define or describe your document retention, preservation and destruction policies, including documents pertaining to placing calls. This request includes but is not limited to documents relevant to the retention of call logs and server logs.

**RESPONSE:**


## PLAINTIFF

**REQUEST FOR PRODUCTION NO. 7:**   Please produce all documents related to Plaintiff, including, but not limited to, all documents evidencing your relationship with Plaintiff or your investigation into calls made to Plaintiff. Your production should include, but not be limited to, all documents relating to:

        a.     the phone number (818) 266-1083;

        b.     the IP address 181.174.101.253;

        c.     lead generation in Guatemala; or

        d.     the "LEAD_ID" 19918610, including, but not limited to, all information regarding the affiliate(s) (including recursive affiliates or "sub-affiliates") paid (by anyone) for the lead and the things that happened to the lead on April 27, 2018, May 19, 2018, and July 23, 2018.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**   Please produce all documents necessary to identify the persons involved in calling Plaintiff.

**RESPONSE:**


## CONSENT

**REQUEST FOR PRODUCTION NO. 9:**   Please produce all documents necessary to identify any databases, lists, or other computer systems or equipment

1  you, or any third party, use to maintain records of a person's purported consent to

2  receive telemarketing calls from or on behalf of you.

3  **RESPONSE:**

4

5  **REQUEST FOR PRODUCTION NO. 10:** Please produce all documents that

6  support or contradict any assertion that you or a vendor made clear and

7  conspicuous disclosures to recipients of your telemarketing calls

8           a.      that the calls would be automated or prerecorded;

9           b.      regarding who was the specific seller of the products marketed;

10  and/or

11           c.      that one could buy your products without consenting to such

12  calls.

13  **RESPONSE:**

14

15  **REQUEST FOR PRODUCTION NO. 11:** Please produce all documents related

16  to any person's purported consent to receive telemarketing. If you contend that

17  consent was obtained via a website, then this request encompasses all:

18           a.      vendors and affiliates (including recursive vendors and

19  affiliates) involved in the generation of the lead;

20           b.      lead forms akin to that purportedly reproduced at Dkt. No. 15-1

21  at ECF 15-16, in database format;

22           c.      code constituting or rendered by the website;

23           d.      screenshots of the website;

24           e.      logs showing visitors' referring URLs, clickstreams,

25  keystrokes, mouse movements, experiences, and exit URLs (regardless of whether

26  or not such visitors consented to telemarketing) and the timestamps of the same;

27           f.      terms of service, privacy policies, TCPA-related language and

28  E-SIGN-required language;

1         g.     stability, performance and error logs;

2         h.     documents sufficient to identify the websites' hosts and the

3  dates of hosting;

4         i.     communications about the website or its host or with its host;

5         j.     documents responsive to the foregoing generated via third-party

6  services, including but not limited to Alexa, Chartbeat, Compete, Comscore,

7  Google Analytics, Mixpanel and Quantcast;

8         k.     other relevant information.

9  **RESPONSE:**

10

11  **REQUEST FOR PRODUCTION NO. 12:** If any documents responsive to the

12  immediately preceding request are in the hands of third parties, please produce all

13  documents necessary to identify those third parties.

14  **RESPONSE:**

15

16                  TELEMARKETING

17  **REQUEST FOR PRODUCTION NO. 13:** Please produce all documents related

18  to telemarketing.

19  **RESPONSE:**

20

21  **REQUEST FOR PRODUCTION NO. 14:** Please produce all documents

22  containing one or more of the following terms (which are separated by commas),

23  whether or not capitalized as herein and even if contained within other words

24  (including but not limited to plurals): autodialer, automatic telephone dialing

25  system, ATDS, robocall, artificial voice, prerecorded voice, artificial or

26  prerecorded voice, Telephone Consumer Protection Act, TCPA, 47 U.S.C. § 227,

27  47 U.S.C. 227, 47 C.F.R. § 64.1200, 47 C.F.R. 64.1200, telemarket, FCC.

28  **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:** Please produce all documents related to telemarketing training provided to your employees.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:** Please produce all documents related to the system(s), platform(s) and/or equipment used by you, or any vendor, for calling.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:** Please produce all documents related to the selection, masking or spoofing of caller IDs (including without limitation their area codes).

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:** Please produce all documents related to whether or not you excluded or removed cell phone numbers.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:** Please produce all documents related to whether or not you excluded or removed numbers on the National Do Not Call Registry.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:** Please produce all documents related to increasing the deliverability of calls or evasion of telephonic spam filters.

**RESPONSE:**

1   **REQUEST FOR PRODUCTION NO. 21:** Please produce all documents

2   containing any of the following information for each telemarketing call:

3          a.     the date and time;

4          b.     the carrier;

5          c.     the caller ID;

6          d.     the duration;

7          e.     the result;

8          f.     identifying information for the intended recipient;

9          g.     identifying information for the actual recipient;

10         h.     the audio recording of the call;

11         i.     an audio file of the prerecorded message(s) sent, or an exemplar

12   of each prerecorded message and an index to associate the exemplars with the calls

13   in which they were used;

14         j.     the text of the SMS or MMS sent, or an exemplar of each SMS

15   or MMS and an index to associate the exemplars with the calls in which they were

16   used;

17         k.     any information showing the called party's consent to be called;

18         l.     the response(s) of the called party, whether then or later, and

19   whether by SMS, IVR, voicemail, email, live oral response recorded mechanically

20   by you, live oral response summarized in written notes by you or otherwise;

21         m.     any information reflecting that the recipient complained or

22   made a do-not-call request;

23         n.     any other relevant information.

24   **RESPONSE:**

25

26   **REQUEST FOR PRODUCTION NO. 22:** Please produce all documents relating

27   generating telemarketing leads.

28   **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:** Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

        a.    the frequency with which calls are placed to the same number;

        b.    scripts;

        c.    reasons triggering the addition of a person's name or telephone number to the list of those receiving calls;

        d.    when and how calls are placed (e.g., the vendor, equipment, computer system, or other program, etc.);

        e.    compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;

        f.    obtaining or verifying prior express consent;

        g.    determining whether a person has revoked consent and/or opted out from receiving calls;

        h.    placing automated calls to persons who have revoked consent and/or opted out;

        i.    complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*; or

        j.    handling do-not-call requests.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 24:** Please produce all internal do-not-call lists.

**RESPONSE:**

1  **REQUEST FOR PRODUCTION NO. 25:** Please produce all lists of TCPA

2  litigants or their phone numbers.

3  **RESPONSE:**

4

5  **REQUEST FOR PRODUCTION NO. 26:** Please produce your do-not-call

6  policies.

7  **RESPONSE:**

8

9  **REQUEST FOR PRODUCTION NO. 27:** Please produce all documents relating

10  to the number of customers or amount of revenue or profit acquired by you from

11  telemarketing.

12  **RESPONSE:**

13

14  **REQUEST FOR PRODUCTION NO. 28:** Please produce all data dictionaries or

15  keys to data tables for:

16          a.      each system, platform, and/or equipment used by you, or any

17  vendor, to send telemarketing, or to store data about telemarketing; and

18          b.      each database, list, system, platform, and/or equipment used by

19  you, or any vendor, to store data about a person's purported consent to receiving

20  telemarketing.

21  **RESPONSE:**

22

23                          FAILURES

24  **REQUEST FOR PRODUCTION NO. 29:** Please produce all documents relating

25  to your failure, alleged failure, or possible failure to comply with your policies

26  related to telemarketing.

27  **RESPONSE:**

28

1  **REQUEST FOR PRODUCTION NO. 30:** Please produce all documents relating
2  to your failure, alleged failure, or possible failure to comply with the TCPA or to
3  honor do-not-call requests.
4  **RESPONSE:**
5
6  **REQUEST FOR PRODUCTION NO. 31:** Please produce all documents relating
7  to the failure, alleged failure, or possible failure of your vendors to comply with
8  any agreements, contracts, statements of work, policies or other instruction(s)
9  related to telemarketing or lead generation.
10  **RESPONSE:**
11
12  **REQUEST FOR PRODUCTION NO. 32:** Please produce all documents relating
13  to the failure, alleged failure, or possible failure of your vendors to comply with
14  the TCPA or to honor do-not-call requests.
15  **RESPONSE:**
16
17  **REQUEST FOR PRODUCTION NO. 33:** Please produce all documents relating
18  to the failure, alleged failure, or possible failure of your vendors to obtain prior
19  express written consent within the meaning of the TCPA.
20  **RESPONSE:**
21
22  **REQUEST FOR PRODUCTION NO. 34:** Please produce all documents relating
23  to complaints or do-not-call requests concerning telemarketing, including, but not
24  limited to, lists or databases containing complaints and metadata about them, and
25  information identifying the complainants. This request includes any complaints to
26  you by mail, email, live call, IVR, SMS, web form, social media, FCC, FTC,
27  CFPB, state attorney general, BBB or any other source.
28  **RESPONSE:**

1

2  **REQUEST FOR PRODUCTION NO. 35:**   Please produce all documents

3  constituting or relating to audits, investigations, inquiries, or studies by you or any

4  third party including, but not limited to, any independent auditor, law firm, or

5  governmental agency, regarding the compliance by you, or any third party or

6  vendor acting on your behalf, with the TCPA or any other state or federal laws or

7  regulations regulating telemarketing. This request is not limited to audits,

8  investigations, inquiries and studies commissioned or directed by you.

9  **RESPONSE:**

10

11  **REQUEST FOR PRODUCTION NO. 36:** Please produce all documents

12  necessary to identify all TCPA lawsuits filed against you, your vendors or your

13  customers.

14  **RESPONSE:**

15

16  <u>VENDORS</u>

17  **REQUEST FOR PRODUCTION NO. 37:** Please produce all documents relating

18  to, including but not limited to all communications with, ReviMedia or its

19  employees or affiliates.

20  **RESPONSE:**

21

22  **REQUEST FOR PRODUCTION NO. 38:** Please produce all documents relating

23  to, including but not limited to all communications with, Best Rate Holdings or its

24  employees or affiliates.

25  **RESPONSE:**

26

27  **REQUEST FOR PRODUCTION NO. 39:** Please produce all contracts and

28  correspondence with vendors.

1 | **RESPONSE:**

2

3 | **REQUEST FOR PRODUCTION NO. 40:** Please produce all documents relating

4 | to or compromising payment(s) to a vendor, including but not limited to those

5 | documents purportedly depicted at Dkt. No. 34-2 at ECF 13, 17.

6 | **RESPONSE:**

7

8 | **REQUEST FOR PRODUCTION NO. 41:** Please produce all documents relating

9 | to training provided to your vendors.

10 | **RESPONSE:**

11

12 | INDEMNIFICATION

13 | **REQUEST FOR PRODUCTION NO. 42:** Please produce all documents relating

14 | to insurance coverage of the acts alleged by Plaintiff, including, but not limited to,

15 | all potentially applicable policies issued by any insurer and all communications

16 | with any such insurers, including, but not limited to, reservation-of-rights letters,

17 | regardless of whether or not such coverage purports to exclude the acts alleged in

18 | this matter and regardless of whether or not such insurers have declined coverage

19 | in this matter.

20 | **RESPONSE:**

21

22 | **REQUEST FOR PRODUCTION NO. 43:** Please produce all indemnification

23 | agreements under which a third party may be responsible for satisfying all or part

24 | of a judgment that may be entered against you in this action, and all

25 | communications with those third parties.

26 | **RESPONSE:**

27

28

1

CORPORATE GOVERNANCE

2 **REQUEST FOR PRODUCTION NO. 44:** Please produce all documents

3 concerning any approval, disapproval or other action taken by your officers,

4 shareholders, members, or board of directors regarding telemarketing, including

5 any agendas, meetings, minutes, correspondence or memoranda.

6 **RESPONSE:**

7

8 **REQUEST FOR PRODUCTION NO. 45:** Please produce documents sufficient

9 to identify your shareholders, owners, members, partners and corporate structure.

10 **RESPONSE:**

11

12 **REQUEST FOR PRODUCTION NO. 46:** Please produce a complete

13 organizational chart for you, or if your operations are subdivided into departments,

14 then please produce the organizational chart for (a) the department(s) responsible

15 for placing telemarketing calls; (b) the department(s) responsible for purchasing,

16 maintaining or operating the system(s) used to place telemarketing calls; (c) the

17 department(s) responsible for hiring or managing any vendor used to place

18 telemarketing calls; and (d) the department(s) responsible for purchasing,

19 maintaining or operating the system(s) used to store lists, database(s) or documents

20 containing logs of calls or logs of purported consent to receive calls.

21 **RESPONSE:**

22

23 **REQUEST FOR PRODUCTION NO. 47:** Please produce all registrations of

24 names by which you do business, including but not limited to fictitious business

25 licenses or certificates.

26 **RESPONSE:**

27

28

1    **REQUEST FOR PRODUCTION NO. 48:** Please produce your latest balance

2    sheet.

3    **RESPONSE:**

4

5         SERVED AND PROPOUNDED on June 17, 2019.

6

7         By: _____

8             Jon B. Fougner (State Bar No. 314097)
             Email: jon@fougnerlaw.com
9             600 California Street, 11th Floor
             San Francisco, California 94108
10            Telephone: (415) 577-5829
             Facsimile: (206) 338-0783
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S SET DISC. GOLDWATER BANK 1
*Fabricant v. Goldwater Bank, N.A.*, Case No. 2:19-cv-00164-DSF-JC

## PROOF OF SERVICE

I, Jon B. Fougner, declare that on June 17, 2019, I was at least 18 years of age and not a party to this action and deposited true and correct copies of the foregoing PLAINTIFF'S SET OF DISCOVERY TO GOLDWATER BANK 1 in sealed envelopes, postage pre-paid for Priority Mail, with the U.S.P.S., addressed to counsel for DEFENDANT GOLDWATER BANK, N.A., as follows:

JACK F ALTURA
IVIE MCNEILL AND WYATT
444 S FLOWER ST
STE 1800
LOS ANGELES, CA 90071-2919

MARIE B MAURICE
IVIE MCNEILL AND WYATT
444 S FLOWER ST
FL 18
LOS ANGELES, CA 90071-2919

SEAN C WAGNER
WAGNER HICKS PLLC
831 E MOREHEAD ST
STE 650
CHARLOTTE, NC 28202-2777

Signed on June 17, 2019, under penalty of perjury under the laws of the United States.

By: _____

Jon B. Fougner (State Bar No. 314097)
Email: jon@fougnerlaw.com
600 California Street, 11th Floor
San Francisco, California 94108
Telephone: (415) 577-5829
Facsimile: (206) 338-0783

*One of the attorneys for Plaintiff Terry Fabricant and the proposed class*